# IN THE

# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

# NO. 21-20681

_____

## UNITED STATES OF AMERICA,
*Plaintiff-Appellee*

### v.

## LOLA SHALEWA BARBARA KASALI,
*Defendant-Appellant*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION, NO. 4:21-CR-00054

_____

## ORIGINAL BRIEF FOR THE APPELLANT
## LOLA SHALEWA BARBARA KASALI

_____

SAMUEL H. WINSTON, La. Bar No. 34821
JEIGH L. BRITTON, La. Bar No. 39820
Winston Bergeron, LLP
1700 Josephine Street
New Orleans, Louisiana 70113
Telephone: 504-577-2500
Facsimile: 504-577-2562
E-Mail: sam@winstonbergeron.com
jeigh@winstonbergeron.com

**ATTORNEYS OF RECORD FOR APPELLANT**

## I.    CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of these proceedings. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

Judges:
Sim Lake
United States District Court Judge
Southern District of Texas (Houston)

Peter Bray
United States Magistrate Judge
Southern District of Texas (Houston)

Appellee:
The United States of America

Attorneys for Appellee:
Carmen Castillo Mitchell (on appeal)
Assistant United States Attorney

Jeremy Raymond Sanders (on appeal)
Assistant United States Attorney

Samantha Bateman (on appeal)
Assistant United States Attorney

Della Grace Sentilles (in the district court)
 Assistant United States Attorney

James Donald McAlister (in the district court)
 Assistant United States Attorney

Jennifer Bilinkas (in the district court)
 Assistant United States Attorney

Jonathan Robell (in the district court)
 Assistant United States Attorney

Matthew G. Grisier (in the district court)
 Assistant United States Attorney

    Appellant:
Lola Shalewa Barbara Kasali

    Attorneys for Appellant:
Samuel H. Winston (on appeal)
Appellate Counsel

Jeigh L. Britton (on appeal)
Appellate Counsel

Nelson S. Ebaugh (on appeal)
Former Appellate Counsel

Sergio J. Sanchez (in the district court)
Trial Counsel

Amr Adnan Ahmed (in the district court)
Trial Counsel

James Stafford (in the district court)
Trial Counsel

Ashley Louise Kaper (in the district court)
Trial Counsel

David Paul Cunningham (in the district court)
Trial Counsel

Guy Lee Womack (in the district court)
Trial Counsel

New Orleans, Louisiana, this 3rd day of July, 2023.

/s/ *Samuel H. Winston*
SAMUEL H. WINSTON, La. Bar No. 34821

## II.    STATEMENT REGARDING ORAL ARGUMENT

Undersigned counsel respectfully requests oral argument because this appeal raises fact-intensive issues and a novel issue of law not yet addressed by this Court.

# III.   TABLE OF CONTENTS

I.    CERTIFICATE OF INTERESTED PERSONS ............................ ii

II.   STATEMENT REGARDING ORAL ARGUMENT ....................... v

III.  TABLE OF CONTENTS ................................................... vi

IV.   TABLE OF AUTHORITIES ............................................ vii

V.    JURISDICTIONAL STATEMENT ........................................ 1

VI.   STATEMENT OF ISSUES ................................................. 1

VII.  STATEMENT OF THE CASE .............................................. 2

VIII. SUMMARY OF THE ARGUMENT ....................................... 5

IX.   ARGUMENT .................................................................. 6

   A.  The district court abused its discretion in denying Ms.
      Kasali's motion to substitute counsel............................... 6

   B.  The district court erred by proceeding to trial in Ms.
      Kasali's absence. ....................................................... 21

   C.  The district court erred in applying certain sentencing
      enhancements relating to loss. ...................................... 37

   D.  The district court erred in awarding restitution. ................ 45

X.    CONCLUSION ............................................................. 49

XI.   CERTIFICATE OF SERVICE ............................................ 50

XII.  CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ............ 51

# IV.   TABLE OF AUTHORITIES

## Cases

*Battaglia v. Stephens*, 824 F.3d 470 (5th Cir. 2016) ...............................12

*Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945) ............................................................................42

*Brown v. Craven*, 424 F.2d 1166 (9th Cir. 1970) ..............................15, 17

*Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989) ..............................................................11

*Cuyler v. Sullivan*, 446 U.S. 335; 100 S.Ct. 1708; 64 L.Ed.2d 333 (1980) ...............................................................................................................12

*Davis v. Holman*, 354 F.2d 773 (5th Cir. 1965) ....................................27

*Illinois v. Allen*, 397 U.S. 337 (1970)...............................................26, 33

*Johnson v. Zerbst*, 304 U.S. 458 (1938)..................................................30

*Kisor v. Wilkie*, 204 L.Ed.2d 841; 139 S.Ct. 2400 (2019)............39, 42, 43

*Martel v. Clair*, 565 U.S. 648; 132 S.Ct. 1276; 182 L.Ed.2d 135 (2012).12

*Stinson v. United States*, 508 U.S. 36; 113 S.Ct. 1913; 123 L.Ed.2d 598 (1993) ...................................................................................................42

*U.S. v. Bays*, 765 Fed.Appx. 945 (5th Cir. 2019) ....................................39

*U.S. v. Hill*, 63 F.4th 335 (5th. Cir. 2023) ...................................26, 32, 33

*U.S. v. Krout*, 56 F.3d 643 (5th Cir. 1995) .............................................26

*United States v. Adams*, 363 F.3d 363 (5th Cir. 2004)...........................46

*United States v. Adelzo-Gonzalez*, 268 F.3d 772 (9th Cir. 2001) ......12, 13

*United States v. Algere*, 457 F. Supp. 2d 695 (E.D. La. 2005) ...............27

*United States v. Alikpo*, 944 F.2d 206 (5th Cir. 1991)............................30

*United States v. Banks*, 55 F.4th 246 (3d Cir. 2022)..................41, 43, 44

*United States v. Beltran-Nunez*, 716 F.2d 287 (5th Cir. 1983) ..........28, 29

*United States v. Benitez-Casas*, 439 Fed.Appx. 307 (5th Cir. 2011).......15

*United States v. Benns*, 810 F.3d 327 (5th Cir. 2016) ............................47

*United States v. Beydoun*, 469 F.3d 102 (5th Cir. 2006) ........................48

*United States v. Blackburn*, 9 F.3d 353 (5th Cir. 1993)..........................47

*United States v. Burke*, 345 F.3d 416 (6th Cir. 2003) ............................27

*United States v. Cardozo*, 68 F.4th 725 (1st Cir. 2023)...........................47

*United States v. Castillo*, 69 F.4th 648 (9th Cir. 2023)...........................42

*United States v. Causey*, 408 F.Supp.3d 1 (D. Mass. 2019) ...................48

*United States v. Cordova-Lopez*, 34 F.4th 442 (5th Cir. 2022) .........41, 43

*United States v. D'Amore*, 56 F.3d 1202 (9th Cir. 1995).........................14

*United States v. Davis*, 61 F.3d 291 (5th Cir. 1995)...............................29

*United States v. DeLeon*, 728 F.3d 500 (5th Cir. 2013) ........................46
*United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) ................41, 43
*United States v. Fallon*, 470 F.3d 542 (3d Cir.2006) ...........................47
*United States v. Gonzalez-Lopez*, 548 U.S. 140; 126 S.Ct. 2557; 165 L.Ed.2d 409 (2006) ........................................................................11, 17
*United States v. Harris*, 597 F.3d 242 (5th Cir. 2010) .........................39
*United States v. Jones*, 733 F.3d 574 (5th Cir. 2013) ............................11
*United States v. Kadhem*, 580 F.Supp.3d 132 (W.D. Pa. 2022) .............48
*United States v. Lillie*, 989 F.2d 1054 (9th Cir.1993)............................20
*United States v. Maloid*, 21-1422, 2023 WL 4141073 (10th Cir. June 23, 2023).......................................................................................................42
*United States v. Maturin*, 488 F.3d 657 (5th Cir. 2007) ........................46
*United States v. Middlebrook*, 553 F.3d 572 (7th Cir. 2009) .................46
*United States v. Moses*, 23 F.4th 347 (4th Cir. 2022)............................42
*United States v. Musa*, 220 F.3d 1096 (9th Cir. 2000) ...........................14
*United States v. Neba*, 901 F.3d 260 (5th Cir. 2018)..............................18
*United States v. Riccardi*, 989 F.3d 476 (6th Cir. 2021) .................40, 41
*United States v. Sharma*, 703 F.3d 318 (5th Cir. 2012)....................46, 47
*United States v. Taylor*, 582 F.3d 558 (5th Cir. 2009) ...........................47
*United States v. Thomas*, 724 F.3d 632 (5th Cir. 2013) .........................28
United States v. Vaknin, 112 F.3d 579 (1st Cir.1997) ............................47
*United States v. Williams*, 993 F.3d 976 (5th Cir. 2021) .......................46
*United States v. Wilson*, 355 F.3d 358, 362 (5th Cir. 2003) ..................35
*United States v. Young*, 482 F.2d 993 (5th Cir. 1973)..........12, 15, 16, 19
*Wood v. Georgia*, 450 U.S. 261; 101 S.Ct. 1097; 67 L.Ed.2d 220 (1981).12

**Statutes**

18 U.S.C. §3663A ...............................................................................44, 45, 46
Fed.R.Crim.P. 43...........................................................................................25, 33
U.S. Const. amend VI .......................................................................................10, 24
U.S.S.G. § 2B1.1 ...............................................................................................passim

## V.  JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. This is a direct appeal from a final decision of the United States District Court for the Southern District of Texas, Houston Division, entering a judgment of conviction and imposing a 70-month term of imprisonment on April 8, 2022. ROA.695-700. The Appellant filed pro se notices of appeal on April 12th and 15th of 2022, which complies with Fed. R. App. P. 4. ROA.701, 717.

## VI.  STATEMENT OF ISSUES

1. Whether the district court abused its discretion in denying Ms. Kasali's motion to substitute counsel.

2. Whether the district court erred in conducting the first part of the trial in Ms. Kasali's absence.

3. Whether the district court erred in applying sentencing enhancements relating to loss, when there was no actual loss.

4. Whether the district court erred in awarding restitution when there was no actual loss.

1

## VII.  STATEMENT OF THE CASE

Underlying the alleged crimes in this case is the Paycheck Protection Program ("PPP") which was authorized by the CARES Act to provide federally backed loans to small businesses. ROA.2123, 2129. The Act authorized the use of $349 billion and then later an additional $300 billion in funding for the PPP. ROA.2129. The PPP was a limited fund administered by the Small Business Administration ("SBA"). ROA.2123, 2129. The PPP allowed an applicant's interest and principal loan to be entirely forgiven. ROA.98. All of the PPP funds allocated by Congress have been disbursed. ROA.1024, 1060.

On February 10, 2021, Ms. Lola Kasali was indicted on two counts of making false statements to a financial institution in violation of 18 U.S.C. § 1014, and on two counts of bank fraud in violation of 18 U.S.C. § 1344. ROA.97-106. The basis of these claims are two PPP loan applications that allegedly contained falsities and fraudulent representations. ROA.97-106. The first PPP loan, on behalf of Lola's Level, was approved in the amount of $1,937,500.00. ROA.100. Once the loan was funded, the accounts were immediately frozen by the receiving bank and fully recovered. The second PPP loan in the amount of

$1,875,944.00, made on behalf of Charm Hair Extension, was denied. ROA.101.

Leading up to trial, Ms. Kasali made several requests for substitution of counsel based on a complete breakdown in communication and conflicts between herself and appointed counsel. ROA.962, 1067, 1548-1549, 1563-1564. These requests were repeatedly denied by the district court. ROA.962, 1067, 1559-1560, 2590, 2621. Ms. Kasali's last desperate request to substitute counsel was made the morning before trial was to begin and was evidenced by her back-and-forth with the district court judge about addressing the issue before changing out of her prison garb to get ready for court. ROA. 956-1115.

Ms. Kasali was absent from the courtroom for the entire first day of her three-day trial. ROA. 956-1093. She was required by the district court to listen to the audio of the voir dire, opening statements, and the first two Government witnesses from the judge's chambers. 956-1093. Although she stated to the district court on several occasions that she did not have an issue with putting on street clothes for trial, the district court was dissatisfied with her responses and Ms. Kasali insisted she needed new counsel. ROA. 956-1115. On the morning of the second day of trial,

Ms. Kasali was present in her street clothes for the remainder of the trial. ROA. 1115.

The trial lasted three days and the Government called nine witnesses. ROA.958, 1096-1097, 1307. Appointed counsel for Ms. Kasali did not present any evidence or witnesses in her defense. ROA.1266-1268.

On December 8, 2021, a jury found Ms. Kasali guilty on all four counts. ROA.585-586. At sentencing, the district court made a finding that the intended loss associated with the crime was the total amount of the two PPP loans. ROA.2336. The district court did not make a finding that there was actual loss. Ms. Kasali was sentenced to 70 months of imprisonment for each count to run concurrently, followed by five years of supervised release on each count to run concurrently. ROA.2344. Without making a finding of actual loss, the district court ordered restitution in the amount of $2,027,686.64. ROA.2345. The district court also granted the Government's motion for forfeiture. ROA.2345.

## VIII. SUMMARY OF THE ARGUMENT

Ms. Kasali was denied critical rights to her defense – her right to conflict-free counsel of her choice and her right to be present during her trial.  First, Ms. Kasali made multiple requests for new counsel because of a serious breakdown in communication and trust. The district court denied these requests by improperly putting the focus on counsel's competency and abilities rather than the quality of the communication between Ms. Kasali and her counsel. The record shows the serious breakdown in this communication, and the breakdown was acknowledged by both Ms. Kasali and her counsel.

Nevertheless, the district court denied the motions to substitute counsel, which forced Ms. Kasali to be represented by attorneys with whom she could not communicate. As a result, Ms. Kasali did not receive an adequate defense at trial and her Sixth Amendment right to counsel of her choice was violated. Accordingly, the district court abused its discretion in denying Ms. Kasali's motion to substitute counsel.

Second, the district court erred when it conducted a partial trial in absentia and in turn violated Ms. Kasali's Sixth Amendment right to be present at her trial. Trial had not yet begun when Ms. Kasali's absence

was ordered by the district court. However, Ms. Kasali could not waive her right to be present at her own trial at that time. Further, any inquiry into whether a potential waiver of presence was made was insufficient. As a result, any finding of waiver by the district court was invalid. Even if the absence of Ms. Kasali ordered by the district court could be grounded in a concern for a potential disruption, which it was not, such a finding would have been improper under the caselaw on disruption and the right to be present.

The district court also made significant errors when sentencing Ms. Kasali. There was no actual loss nor did the district court make a finding of actual loss. Thus, the 18-level sentencing enhancement and the award of restitution without actual loss constitute error.

## IX.   ARGUMENT

### A. The district court abused its discretion in denying Ms. Kasali's motion to substitute counsel.

*i.   Relevant Facts.*

On April 19, 2021, the district court appointed Ms. Ashley Kaper to represent Ms. Kasali. ROA.139. On June 18, 2021, Ms. Kaper filed a motion to withdraw citing a "lack of trust" that led to a "complete breakdown in the attorney-client relationship." ROA.1531-1532. Ms.

Kaper also stated that without a functioning attorney-client relationship, she was "unable to provide effective assistance of counsel to Ms. Kasali." ROA.1531-1532. On June 22, 2021, Ms. Kaper's motion to withdraw was granted.

On June 22, 2021, the court appointed James Stafford to represent Ms. Kasali. ROA.185. On June 24, 2021, Mr. Stafford motioned the court for appointment of co-counsel to assist in the preparation of Ms. Kasali's case. ROA.1535-1536. At a hearing on the motion, Mr. Stafford revealed information that he had learned from Ms. Kasali's former counsel – that the Government told former counsel "that he should never have a meeting with Ms. Kasali alone." ROA.2323-2324.

As a result, Mr. Stafford was afraid that if he met with Ms. Kasali alone that she might accuse him of improper conduct or assault. ROA.2323-2324. Mr. Stafford also requested the appointment of female counsel who could serve as a witness if a false claim was made against him. ROA.2323-2324. Mr. Stafford also told the court that every lawyer he talked to wanted to know whether he had done something to offend the Court for appointing him to this case. ROA.2325. The court suggested that Mr. Stafford attempt to convince Ms. Kaper to return to the case.

ROA. 2326, 2329. On July 1, 2021, the court reappointed Ms. Kaper. ROA.189.

On August 30, 2021, Ms. Kasali sent a pro se letter to the court objecting to Ms. Kaper being reappointed as co-counsel due to the conflict. ROA.1548-1549. Ms. Kasali further cited the lack of communication between herself and Mr. Stafford and Ms. Kaper, including Mr. Stafford hanging up the phone on her, which Ms. Kasali stated was caused by Ms. Kaper's influence on Mr. Stafford. ROA.1548-1549. Ms. Kasali also requested the disqualification of current counsel due to their ineffectiveness and requested appointment of new conflict-free counsel. ROA.1548-1549.

On October 4, 2021, Mr. Stafford and Ms. Kaper opposed Ms. Kasali's request for new counsel, although noted that they "cannot deny that the attorney-client relationship here is significantly strained." ROA.1552-1553. Just three days later, Mr. Stafford and Ms. Kaper filed a motion to withdraw from the case due to the distrust that existed. ROA.1556-1557.

On October 15, 2021, the court held a hearing on Ms. Kasali's motion to substitute. ROA.2553. Ms. Kasali stated from the beginning of

Ms. Kaper's appointment that Ms. Kaper did not seem willing to help get evidence. ROA.2567. Ms. Kasali also stated that she did not believe Ms. Kaper was competent or conflict free. ROA.2568. Ms. Kasali also stated that her counsel said it would take more money to get her out and provide her with effective assistance of counsel. ROA.2586.

In response to Ms. Kasali's allegations that counsel hung up on her and there was a lack of communication, Mr. Stafford admitted that he instituted a rule that he would leave if Ms. Kasali would not stop discussing certain aspects of the pre-trial rulings in her case. ROA.2577. Counsel stated that Ms. Kasali's lack of cooperation was preventing them from investigating the case. ROA.2561. Ms. Kasali said she was willing to cooperate with other conflict-free counsel that were not guided by their own personal interests. ROA.2581, 2585. In denying the motion to substitute counsel, the court concluded that Ms. Kasali had excellent lawyers and that she must cooperate with them. ROA.2590.

Ms. Kasali also expressed that her family had hired a private attorney on her behalf, but she did not know who because she was placed in special confinement which restricted her ability to initiate phone calls and emails. ROA.2578-2581. The court called Ms. Kasali's father who

9

stated that they were still trying to hire an attorney on her behalf because the attorney that was supposed to take the case backed out. ROA.2583-2584.

Sometime before October 27, 2021, Ms. Kasali told counsel to request another hearing with the court to state additional grounds why her appointed counsel should be dismissed, including that they were ineffective and incompetent to represent her at trial, and that she had fired them so they have an ethical duty to be removed. ROA.1563-64. Counsel opposed the request stating that they did not believe that any of her issues were meritorious. ROA.1563-64. At the hearing, the district court, in conclusory fashion, denied the motion for new counsel stating that the court has been over this "many times" and referred to its previous rulings on the issue. ROA.2621.

On the day of trial, Ms. Kasali again urged her request for new counsel which was denied. ROA.962. At some point prior to trial, Ms. Kasali also sent a letter to this Court that was labeled "Formal Grievance," which was requesting her current counsel to withdraw. ROA.1067. This Court forwarded the letter back to the district court

because no appeal was pending and requested the district court to treat it as a motion to withdraw current appointed counsel.

The district court stated the letter raised the same issues Ms. Kasali has been raising for "weeks and months" and denied it because counsel was more than qualified and Ms. Kasali had refused to cooperate with qualified counsel. ROA.1067.

ii.    *Standard of Review.*

This Court reviews the district court's denial of a motion to substitute counsel for abuse of discretion. *United States v. Jones*, 733 F.3d 574, 587 (5th Cir. 2013).

iii.    *General Legal Standards.*

The "Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144; 126 S.Ct. 2557, 2561; 165 L.Ed.2d 409 (2006) (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624–625, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989)); U.S. Const. amend VI. This Sixth Amendment right to counsel also extends to guarantee representation that is adequate and

free from conflicts. *Wood v. Georgia*, 450 U.S. 261, 271; 101 S.Ct. 1097, 1103; 67 L.Ed.2d 220 (1981); *Cuyler v. Sullivan*, 446 U.S. 335, 344; 100 S.Ct. 1708, 1716; 64 L.Ed.2d 333 (1980).

In reviewing a district court's denial of a motion to substitute, there are three important factors: (1) the adequacy of the district court's inquiry into the defendant's complaint, (2) the cause and extent of any conflict or breakdown in communication, and (3) the timeliness of the motion. *Martel v. Clair*, 565 U.S. 648, 663; 132 S.Ct. 1276, 1287; 182 L.Ed.2d 135 (2012); *United States v. Adelzo-Gonzalez*, 268 F.3d 772, 777 (9th Cir. 2001); *Battaglia v. Stephens*, 824 F.3d 470, 472 (5th Cir. 2016).

   i.   *The district court's inquiry into Ms. Kasali's dissatisfaction with counsel was inadequate.*

Before ruling on a motion to substitute counsel due to an irreconcilable conflict, a district court must conduct an inquiry to address the defendant's dissatisfaction, distrust, and concern. *Adelzo-Gonzalez*, 268 F.3d at 777; *see also United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973). The inquiry must be adequate in that it provides a sufficient factual basis including the evaluation of the depth of any conflict between the defendant and counsel, the extent of any breakdown in communication, how much time may be necessary for a new attorney to

prepare, and any delay or inconvenience that may result from substitution. *Adelzo-Gonzalez*, 268 F.3d at 777; *see also Young*, 482 F.2d at 995.

In *Adelzo-Gonzalez*, the court reversed the conviction because the district court failed to recognize the material breakdown in communication between the defendant and his court-appointed attorney. *Adelzo-Gonzalez*, 268 F.3d at 781. The defendant motioned the court three times for a new attorney by sending letters directly to the court. *Id* at 774. The requests were made at various stages of the proceedings: six weeks, two weeks, and one day before trial. *Id* at 777. Each time the court held a hearing on the motion. *Id*. Among the reasons for the motions, the defendant cited growing animosity due to feeling that his attorney was not listening to him, that he could not get along with him, and that the attorney used profanity while meeting with him. *Id*.

The court in *Adelzo-Gonzalez* found that two of the three district court's inquiries were inadequate because the "district court asked only open-ended questions and put the onus on defendant to articulate why appointed counsel could not provide competent representation. 268 F.3d at 777.

As *Adelzo-Gonzales* demonstrates, the district court here failed to adequately inquire into the conflict and break-down in communication that existed. The district court improperly put the focus of the inquiry on the counsel's ability and not on the issues in communication and the quality of the attorney-client relationship. *See United States v. Musa*, 220 F.3d 1096, 1102 (9th Cir. 2000) ("Even if a defendant's counsel is competent, a serious breakdown in communication can result in an inadequate defense."); *see also United States v. D'Amore*, 56 F.3d 1202, 1206 (9th Cir. 1995), *overruled on other grounds*, ("[A] court may not deny a substitution motion simply because it thinks current counsel's representation is adequate.").

The district court here stated several times that Ms. Kasali's appointed counsel were well-known and excellent lawyers, while ignoring the clear break-down in communication and counsel's clear conflict with their own personal interests. ROA.2569, 2590.

Similar to the defendant in *Adelzo-Gonzalez,* Ms. Kasali made multiple requests for new counsel – starting months prior to trial which continued throughout the trial. The district court also improperly put the burden on Ms. Kasali to demonstrate the issues with her representation

14

and concluded that simply because Ms. Kasali had excellent representation, new counsel was not warranted and Ms. Kasali must work with them. ROA.2581, 2590. Thus, the district court abused its discretion in denying Ms. Kasali's requests for a new attorney on several occasions despite clear indication of an irreconcilable conflict.

    *iv.*　*Substitution of counsel was warranted due to the conflicts and breakdowns in communication.*

In order to warrant a substitution of appointed counsel, there must be good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict, which leads to an apparently unjust verdict. *United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973); *see also United States v. Benitez-Casas*, 439 Fed.Appx. 307, 308 (5th Cir. 2011); *see also Brown v. Craven*, 424 F.2d 1166, 1170 (9th Cir. 1970) ("[T]o compel one charged with grievous crime to undergo a trial with the assistance of an attorney with whom he has become embroiled in irreconcilable conflict is to deprive him of the effective assistance of any counsel whatsoever.").

This Court in *Young* found that substitution of counsel was not warranted because the record failed to demonstrate that there was an irreconcilable conflict or any breakdown of communication between the

defendant and his attorney. 482 F.2d at 996. On the first day of trial, the

defendant expressed dissatisfaction with his counsel citing his counsel's

failure to notify him of a transfer in confinement and his suspicion that

counsel disclosed confidential information to the prosecution. *Id* at 994.

Additionally, the record showed that the defendant received vigorous and

able representation at trial. *Id* at 996.

In the instant case, the complete breakdown in communications

warranted a substitution of counsel. Unlike the defendant in *Young*, Ms.

Kasali repeatedly expressed her concerns with her appointed counsel

months before trial. Also unlike *Young*, the record here demonstrates

that there was a serious breakdown in communications. Both Ms. Kasali

and her counsel acknowledged this breakdown. Ms. Kaper withdrew once

citing this breakdown and attempted to withdraw again along with Mr.

Stafford due to distrust. This serious breakdown in communications and

lack of trust warranted substitution of counsel.

Moreover, Ms. Kasali's trial representation was inadequate as a

result of the strained relationship. Unlike *Young*, Ms. Kasali did not

receive a vigorous and able representation at trial. Ms. Kasali expressed

that she had evidence and witnesses she wished to present at trial.

However, due to the distrust and breakdown in communications, counsel was unable to investigate or discuss the defense with Ms. Kasali and counsel did not produce *any* contrary witnesses or evidence in her defense. ROA.2560-2561.

Although a defendant may not have an absolute right to counsel of choice when counsel is appointed – appointed counsel must be *willing* to represent the defendant. *See Gonzalez-Lopez*, 548 U.S. at 144. Here, both counsel made attempts to withdraw at different stages and admitted to numerous breakdowns and issues with Ms. Kasali. Thus, Ms. Kasali did not receive a willing or adequate defense.

A conflict of interest also existed here that warranted a substitution of counsel. A sufficient conflict exists where a defendant "was forced into trial with a particular lawyer with whom he was dissatisfied, with whom he could not cooperate, and with whom he would not, in any manner whatsoever, communicate." *Brown v. Craven*, 424 F.2d 1166, 1169 (9th Cir. 1970). Here, Ms. Kaper motioned to have Ms. Kasali's competency evaluated due to her interactions with Ms. Kasali, and shortly thereafter withdrew from the case, only to be re-appointed. ROA.1497-1498. These

actions evidence why Ms. Kasali distrusted Ms. Kaper and show Ms. Kaper's unwillingness to represent Ms. Kasali.

Mr. Stafford also demonstrated his own personal interests were in conflict with Ms. Kasali's – he had concerns about meeting with Ms. Kasali alone and wanted to be protected during his visits with her. ROA.2323. After Ms. Kasali's family had hired an attorney, he returned his money after speaking with Mr. Stafford. ROA.1011. This lack of trust admitted by Ms. Kasali and counsel plainly caused a significant conflict.

Although Ms. Kasali could not articulate all these reasons for the court she shouldn't have had to when the conflict and breakdown was as clear as discussed above. As a result, forcing Ms. Kasali to be represented by counsel who had other interests and with whom she could not communicate is a sufficient conflict warranting a substitution of counsel.

v.    *Ms. Kasali's requests for substitution of counsel were timely.*

The right to appointed counsel of choice must also be balanced against the needs of fairness and the scheduling demands of the court's calendar. *Id* at 152; 4) *United States v. Neba*, 901 F.3d 260, 265 (5th Cir. 2018). Considerations of fairness include: "(1) whether a continuance would be required; (2) whether the party's concerns were based on

anything of a factual nature; (3) whether the party requested substitution of counsel late in the case; and (4) whether a continuance could compromise the availability of key witnesses." *Neba*, 901 F.3d at 265 (internal citations omitted).

In *Neba*, this Court affirmed the district court's denial of a motion to substitute counsel. 901 F.3d at 266. The motion was made within a week of trial and the defendant was out on bond. *Id*. The defendant's request was made because she believed that her counsel was not prepared for trial. *Id* at 265. The court reasoned that a request for counsel of choice may not be used for reasons of delay, which was why the defendant had made the request. There was also not "good cause" for the request as there was no evidence of a conflict or breakdown in communications. *See Young*, 482 F.2d at 995.

In the instant case, Ms. Kasali made several motions to substitute counsel prior to trial. ROA.962, 1067, 1548-1549, 1563-1564. If these motions would have been granted, it would have given Ms. Kasali more time to hire counsel of her choice or to receive new appointed counsel that she trusted. At that stage, any delays would not have seriously inconvenienced or prejudiced the court or the Government.

19

Ms. Kasali also made a request for new counsel the day of trial. A district court may not deny a motion to substitute counsel solely because it was late. *United States v. Lillie*, 989 F.2d 1054, 1056 (9th Cir.1993), *overruled on other grounds*. Here, Ms. Kasali made clear to the court that she believed there were violations in the speedy trial act. Ms. Kasali's desires were not to delay trial, only to receive counsel that she trusted and could communicate with.

After the defense told the court they would not be calling any witnesses and rested, Ms. Kasali requested extra time to gather her own witnesses in support of her defense, which was denied. ROA.1267. She lacked any access to contact witnesses and did not trust counsel to do so for her. This would have required a continuance, but the ability to present an adequate defense should have outweighed any timing issues. Moreover, there was no indication that Government witness's availability would be compromised by a continuance. As a result, the district court abused its discretion in failing again the day of trial to grant Ms. Kasali's request to substitute counsel.

**B. The district court erred by proceeding to trial in Ms. Kasali's absence.**

    *i.   Relevant Facts*

       *a. Pretrial Conference*

Ms. Kasali was not physically present in the courtroom for the entire first day of her three-day trial, which included jury selection, opening statements, and the Government's first two witnesses. ROA. 956-1093.

Her absence from trial began during a pretrial conference on the morning that the trial was to take place. ROA. 959. The district court commenced the pretrial proceeding with only counsel present, without Ms. Kasali or the jury, and stated the following without having spoken directly with Ms. Kasali:

> Ms. Kasali has refused to put on her street clothes and has told the marshals that she does not want to participate because she does not recognize her appointed counsel. So, I have asked the marshals to bring her down in jail clothes and to hold her on this floor at a location known to me.
>
> We have several options. We can go ahead and bring her in and have her sit at the table with you. She won't be in street clothes – she will be in jail clothes – and proceed with voir dire.

Before we do that, I'm going to have her brought in here to make a record that she refuses to voluntarily come into the courtroom.

ROA. 959-960.

Once brought in, Ms. Kasali and the district court judge began a back-and-forth in which the judge repeatedly asked whether Ms. Kasali would dress for court, while Ms. Kasali repeatedly insisted that she first needed to address the court about how her right to the counsel of her choice was being violated. ROA.962-968. Both the judge and Ms. Kasali became equally frustrated with the back-and-forth. ROA.962-968.

Nevertheless, Ms. Kasali stated that she would get dressed for court but did not want to waive her challenge and overall dissatisfaction with her trial counsel by proceeding to trial with them:

Ms. Kasali: I have a right to my attorney. I'm telling you.

The Court: Will you put on street clothes if I have the marshals take you back upstairs?

Ms. Kasali: I don't know how to explain to you that this is the problem, this is the problem, and it's not the street clothes. **I want to dress out.** This is the problem: These attorneys sitting here is the problem.

ROA. 965-66 (emphasis added).

The back-and-forth continued until the court started asking about whether both sides wanted to proceed with her in jail clothes, to which Ms. Kasali responded, "I'm telling you what the problem is. **The problem isn't the clothes**. This is the problem (indicating)." ROA. 967 (emphasis added).

Over Ms. Kasali's objection, her court-appointed counsel, whom Ms. Kasali was seeking to have taken off of her case, told the court that *he* would like to proceed without *her* being present. ROA. 967. Upon this statement by her trial counsel, the court ordered the marshals to take Ms. Kasali out of the courtroom and stated she was refusing to answer the court's questions, to which Ms. Kasali responded, "that's not true." ROA. 968.

The district court then stated: "Let the record reflect it will be prejudicial for the defendant to be participating in voir dire wearing jail clothes with marshals standing guard of her. Also, there is a possibility she might act out during voir dire." ROA. 968. The judge then asked for the marshals to bring her upstairs while his law clerk would make arrangements for Ms. Kasali to hear jury selection from the law clerk's

office speaker but not be physically present in the courtroom. ROA. 968-69.

> b. *The district court conducted jury selection, opening statements, and Government witnesses in Ms. Kasali's absence.*

After the pretrial conference, the jury pool was brought in and jury selection began in Ms. Kasali's absence. ROA. 970-1005. The judge made a brief statement about Ms. Kasali's right to be absent during her trial during voir dire and gave a preliminary instruction on the same after the jury had been selected. ROA. 975, ROA. 1002.

After the jury was selected, counsel for both sides and the judge came to the room where Ms. Kasali was being held to discuss her presence at trial again. ROA. 1007. The same back-and-forth from before continued with the judge asking Ms. Kasali if she would wear clothes for court and Ms. Kasali asking for her issues with her counsel to be addressed while insisting that the clothing was not the issue. ROA. 1009 ("It's the attorneys. I keep telling you it's not the clothing."); ROA. 1010 ("Court: …do you want to sit in the courtroom in jail clothes? Ms. Kasali: I do not. I'm telling you that the clothes is not the problem. It's the attorneys.").

Both the district court and Ms. Kasali summed up their back-and-forth when Ms. Kasali said, "It's like you're having a hard time understanding me." ROA. 1011. "No. You're having a hard time answering my question," the court responded. ROA. 1011. The court then concluded that Ms. Kasali would remain in that room listening in isolation and not physically present with her counsel before the jury at her own trial for the remainder of the day. ROA 1012.

The Government asked if the court was specifically finding that Ms. Kasali was waiving her opportunity to be present for the rest of the trial, which the court confirmed was its finding. Ms. Kasali responded on the record: "**I do not waive my appearance.**" ROA. 1012 (emphasis added). Opening statements and the Government's witnesses then proceeded back in the courtroom without Ms. Kasali present. ROA. 1012-1093.

On the morning of the second day of trial, there was additional back-and-forth on the issue of Ms. Kasali's presence before the jury was brought in. ROA. 1098-1115. Eventually, she agreed to put on street clothes and was allowed to be present for the rest of the trial. ROA. 1115.

*ii.   Discussion*

> *a. Ms. Kasali did not waive her right to be present at her trial because the trial had not yet begun when her absence first occurred.*

The Confrontation Clause of the Sixth Amendment states that "in all criminal prosecutions, the accused shall enjoy the right… to be confronted with the witnesses against him…" U.S. Const. amend. VI. One of the most basic rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom. *U.S. v. Hill*, 63 F.4th 335, 347 (5th. Cir. 2023) (citing *Illinois v. Allen*, 397 U.S. 337 (1970)).

Federal Rule of Criminal Procedure 43 codifies and particularizes this right by stating that a defendant, "must be present at… *every* trial stage, including jury impanelment…" Fed.R.Crim.P. 43(a) (emphasis added).

A defendant can waive her right to be present at her trial if she is "voluntarily absent *after the trial has begun*, regardless of whether the court informed the defendant of an obligation to remain during trial…" Fed.R.Crim.P. 43(c)(1)(A) (emphasis added). Further, this Court has found that a trial begins when the parties begin jury selection. *U.S. v. Krout*, 56 F.3d 643, 645-646 (5th Cir. 1995)

26

Here, the trial had not yet begun when Ms. Kasali's absence from the courtroom occurred. She was ordered out by the judge during a pretrial conference before jury selection had begun and without being asked if she wanted to waive her right to be present. ROA. 968. This was, in essence, a trial that started in absentia without the requisite waiver of the right to be present.

As this Court found in *Krout*, for the purposes of Rule 43 and the right to be present at every stage of one's trial as enshrined in the Confrontation Clause, a trial begins when jury selection begins. 56 F.3d at 645-646; *United States v. Burke*, 345 F.3d 416, 422-23 (6th Cir. 2003); *United States v. Algere*, 457 F. Supp. 2d 695, 699 (E.D. La. 2005). Correspondingly, a right cannot be exercised and/or waived if it is not yet ripe to do so. *See Davis v. Holman*, 354 F.2d 773, 776 (5th Cir. 1965) (holding that the defendant could not waive his constitutional right to counsel at arraignment because it did not exist at the time). Therefore, Ms. Kasali was unable to waive her right to be present at her trial because the right had not yet come into existence for it to be waived.

As such, the court committed plain error by starting a trial in absentia without a valid waiver before jury selection had begun. *See*

*United States v. Thomas*, 724 F.3d 632, 643-44 (5th Cir. 2013) (holding that the defendant's absence from jury impanelment was a deviation from her legal rights because she did not waive them).

> *b. Even if the trial had begun, the district court abused its narrow discretion by proceeding to trial without a valid and voluntary waiver of the right to be present.*

"A district court has 'only a narrow discretion' in deciding whether to proceed with a trial when the defendant is voluntarily in absentia because the right to be present at one's own trial must be carefully safeguarded." *United States v. Beltran-Nunez*, 716 F.2d 287, 290 (5th Cir. 1983) (emphasis in original) (citations omitted).

"Before exercising its narrow discretion to commence or continue the trial in the defendant's absence, the trial court must at the time make a record inquiry to attempt to ascertain the explanation for the absence of the accused, and whether balancing the likelihood that the trial could soon take place with the defendant's presence against the undue inconvenience or prejudice occasioned by a slight delay or a rescheduling of the trial, the district court could properly exercise its narrow discretion to commence or continue the trial in the absence of the accused." *Beltran-Nunez*, 716 F.2d at 291. In other words, "the trial judge must inquire into

the reason for the defendant's absence and determine whether it constitutes a voluntary waiver of the right to be present." *United States v. Davis*, 61 F.3d 291, 302 (5th Cir. 1995).

Here, the district court abused its narrow discretion because its inquiry was focused on Ms. Kasali's clothes and not on her actual right to be present at each stage of her trial. Yet it was apparent that the district court had already made up its mind *before* it ever questioned Ms. Kasali on the record and before any back-and-forth had taken place regarding her clothes or her right to be present. *See* ROA. 959-960.

Instead of "balancing the likelihood that trial could soon take place" with Ms. Kasali's presence "against undue convenience or prejudice occasioned by a slight delay or rescheduling of the trial," the district court repeatedly ignored Ms. Kasali's statements that her clothing was not the reason she was protesting – she made clear it was her counsel. *Compare Beltran-Nunez*, 716 F.2d at 291 *with* ROA. 967 ("…it's not the street clothes. I want to dress out."), 1009 ("It's the attorneys. I keep telling you it's not the clothing."), 1010 ("I'm telling you that the clothes is not the problem…").

Furthermore, Ms. Kasali did not voluntarily leave the courtroom or ask the marshals to bring her out. She was ordered out after her own counsel stated that *he* would like to proceed without *her* – Ms. Kasali made no such statements that she wished to be absent. ROA. 968.

Nevertheless, the judge then made a finding that it would be prejudicial for Ms. Kasali to be present in her jail clothes during jury selection and added that she *might* be disruptive, which is discussed in more detail below. ROA. 968. But the court did not find that she had voluntarily waived her right to be present. *See* ROA. 956-1005.

This limited finding and the subsequent absence of Ms. Kasali during her jury selection were contrary to the inquiry requirements of the case law on this issue. *See United States v. Alikpo*, 944 F.2d 206, 209-210 (5th Cir. 1991) (*quoting Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (citations omitted) (affirmed that there is a long-standing presumption against waiver of fundamental rights in ambiguous situations). This was an abuse of the court's narrow discretion.

The district court crystalized its abuse of discretion in its subsequent inquiry after jury selection before opening statements and the first two Government witnesses. Sensing that this issue would arise

on appeal, the Government asked if the court was, for the first time, specifically finding that Ms. Kasali was waiving her opportunity to be present for the rest of the trial, which the court confirmed was its finding. ROA. 1012;

Ms. Kasali responded on the record: "**I do not waive my appearance.**" ROA. 1012 (emphasis added). Yet the district court treated her as if she had said the opposite words and ordered her out of the courtroom. This too was not the careful "safeguarding" of the right to be present or the balancing of the right against other considerations. It was the improper finding of a waiver in direct contradiction to Ms. Kasali's explicit statement that she did not waive her right to be present. Consequently, the district court abused its narrow discretion, and a reversal is warranted. *Compare with Alikpo*, 944 F.2d 209-210, (holding waiver invalid where defendant was not present and counsel told the court he was willing to start trial without the defendant and holding error was not harmless because defendant was prejudiced by his absence at the beginning of the proceedings).

        *c. Alternatively, the trial court abused its discretion by removing Ms. Kasali from the courtroom for purportedly being disruptive without adequate warning or clarification.*

Ms. Kasali contests any assertion that she was disruptive in the courtroom. ROA. 956-1115. Not directly answering some of the judge's questions is not the same thing as being disruptive. In addition, the district court based its decision to keep Ms. Kasali absent from the courtroom on an invalid determination that she waived her right to be present and *not* on an actual disruption. *See infra.* Nevertheless, the district court did make additional mention of her potentially being disruptive. To the extent that the district court's findings below can be construed to be based on a courtroom disruption, that finding was done so in error.

When a defendant is ordered removed from the courtroom for alleged disruptive behavior, the standard of review is for an abuse of discretion. *United States v. Hill*, 63 F.4th 335, 347 (5th Cir. 2023). Further Federal Rule of Criminal Procedure 43 states that a defendant waives the right to be present "when the court warns the defendant that it will remove him from the courtroom for disruptive behavior, but the

defendant persists in conduct that justifies removal from the courtroom." Fed. R. Crim. P. 43(c)(1)(C).

Interpreting Rule 43, this Court in *Hill* held that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a "manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Hill,* 63 F4th at 348 (emphasis added).

In this case, nothing in the record establishes that Ms. Kasali was conducting herself in a manner so disorderly, disruptive, and disrespectful that the court could not continue jury selection in her presence. In *Hill,* the defendant conceded that his outburst behavior in the courtroom – yelling and attempting to address the jury – was disruptive. *Id.* He was also warned repeatedly before his removal was ordered. *Compare with Allen*, 379 U.S. at 343, (holding that the defendant who consistently interrupted and threatened the judge and engaged in significant and extreme behavior in the courtroom warranted a removal).

Ms. Kasali only objected to her appointed counsel and was removed because the trial judge was displeased with her refusal to directly answer some of his questions about getting dressed for court without bringing up her counsel issue. Unlike the facts in *Hill* and *Allen,* Ms. Kasali never insulted the judge nor acted in a manner so disruptive that it would warrant her removal.

In fact, the record indicates that Ms. Kasali was attempting to be respectful to the trial judge while still trying to protect her rights – she was so estranged from her attorneys at that point that she had to essentially act pro se to protect her rights. She tried, stating multiple times that "it's the attorney, it's not the clothing"; "I want to be present, but I have my right to my attorney of choice." Ms. Kasali's language does not represent a defendant who is trying to be disrespectful and disruptive in the courtroom; rather, one of a defendant trying to exercise her Sixth Amendment right to counsel.

Thus, a determination that Ms. Kasali was disruptive would improperly expand the interpretation of "disruptive" as observed in *Hill*, *Allen,* and the plain language of Fed. R. Crim. P. 43(c)(1)(C). As such, this

Court should reverse the trial court's ruling that Ms. Kasali was being disruptive.

> ### d. The district court's error in proceeding to trial in Ms. Kasali's absence was not harmless.

Ms. Kasali's denial of her constitutional right to be physically present before jury selection began was not a harmless error. When there is a determination that there was plain error, the defendant must show that the error affected her substantial rights with a specific showing of prejudice. *United States v. Wilson*, 355 F.3d 358, 362 (5th Cir. 2003).

In this case, the critical reason why Ms. Kasali was hesitant to wear her street clothes was because she was trying to protect her Sixth Amendment right to counsel as best as she knew how as a layperson. As a substantial right, the right to counsel and resulting prejudice in this scenario is easily discernible.

Ms. Kasali could not assist her counsel in her defense in any meaningful way while the trial was going on as she was forced to listen to the audio of the trial in another room. Ms. Kasali also asserts that she

did not even hear the beginning of jury selection because she was not initially brought to the room where the audio was set up.[1]

Moreover, Ms. Kasali and the potential jurors could not see each other to determine if there were any potential conflicts during voir dire. Additionally, Ms. Kasali could not inform her attorneys when to object or strike certain jurors based on her own personal knowledge. For example, there were some potential jurors who worked as guards in corrections, which is also the same field that Ms. Kasali says her father works in. ROA. 994-995.

Under the Confrontation Clause, Ms. Kasali was also entitled to be present during the Government's first two witnesses who testified against her. Yet again she could have been assisting her counsel with important information for cross-examination based on the factual information testified to by the Government witnesses. However, she was deprived of this opportunity.

Thus, under the totality of the circumstances, her counsel was not well-equipped to proceed without Ms. Kasali during jury selection or

---

[1] Ms. Kasali asserts that she attempted to raise this issue previously in her motions to the court but all of them were strickened from the record because they were not filed through her counsel. *See e.g.*, ROA.25 (various motions "STRICKEN").

during the beginning of the Government's case in chief. For these reasons, Ms. Kasali's denial of her right to be present was not harmless and reversal is required.

### C. The district court erred in applying certain sentencing enhancements relating to loss.

*i.*    *Relevant Facts.*

The initial pre-sentence investigation report ("PSR") calculated that the base offense level under U.S.S.G. § 2B1.1(a)(1) was 7. ROA.1409. An 18-level enhancement was added on the basis that the intended loss was $3,813,444.00 representing the total amount of the two PPP loans forming the basis of the charges against Ms. Kasali. ROA.1408-1409. The PPP loan for Lola's Level was approved in the amount of $1,937,500.00. ROA.1428. The PPP loan for Charm Hair Extensions in the amount of $1,875,944.00 was denied. ROA.1428.

The PSR also added a 2-level enhancement because more than $1,000,000.00 in gross receipts was derived from one or more financial institutions as a result of the offense. ROA.1409. As a result of the enhancements, the total adjusted offense level was 27. ROA.1409. Ms. Kasali's criminal history score was zero, resulting in a criminal history

category I. ROA.1412. The advised imprisonment range was 70-87 months.

The Defense objected to the loss calculation, stating that Ms. Kasali personally received zero dollars. ROA.2341, 2343. The PPP loan that was approved was immediately seized and the funds never made it to her personally – there were no withdrawals in cash or checks. ROA.2341. The Government also filed objections seeking the amounts of four additional loan applications totaling $5,875,945.00 to be included in the loss calculation. ROA.1447. These loans were denied and were not charged in the indictment nor was evidence of these loans presented at trial. ROA.1459.

The final PSR included the additional loans in the loss calculation, which increased the loss enhancement by two-levels, resulting in a total offense level of 29. ROA.1461-1462. This increased the recommended range of imprisonment to 87-108 months. ROA.1469. At sentencing, the district court found that the intended loss was $3,813,444.00 and the total offense level was 27. ROA.2336. The court then sentenced Ms. Kasali to 70 months of imprisonment. ROA.2344.

ii.  *Standard of Review*

After a thorough analysis of the appropriate standard of review, this Court has concluded that it must consider "de novo how the [district] court calculated the loss, because that is an application of the guidelines, which is a question of law." *United States v. Harris*, 597 F.3d 242, 250 (5th Cir. 2010); *U.S. v. Bays*, 765 Fed.Appx. 945, 952 (5th Cir. 2019) ("We review the district court's application of U.S.S.G. § 2B1.1(b)(1), including its method of calculating loss under that section de novo).

iii. *Relevant developments in the law instruct that this Court should afford no deference to the guideline's commentary on loss enhancements.*

In 2019, the Supreme Court narrowed the *Auer* deference given to administrative agencies' interpretations of its regulations. *Kisor v. Wilkie*, 204 L.Ed.2d 841; 139 S.Ct. 2400, 2415 (2019). Specifically, a court should not afford *Auer* deference unless the court finds a regulation is genuinely ambiguous after the court has resorted to all the standard tools of interpretation to eliminate the ambiguity. *Id*. Moreover, the agency's interpretation must also come "within the zone of ambiguity the court has identified. *Id* at 2416.  Essentially, the commentary's interpretation

cannot broaden the regulation. *Id* at *2420*; *United States v. Riccardi*, 989
F.3d 476, 488 (6th Cir. 2021).

In 2021, the Sixth Circuit applied *Kisor* to the application notes in
the commentary that accompanies the Federal Sentencing Guidelines.
*Riccardi*, 989 F.3d at 485. *Riccardi* specifically analyzed the ambiguity
and commentary of U.S.S.G. § 2B1.1(b)(1). *Id* at 481. U.S.S.G §
2B1.1(b)(1) directs district courts to increase the base offense level
depending on the amount of "loss," but the guideline itself leaves this
critical word undefined. *Id.* Instead, the Sentencing Commission added
guidance over how to determine the "loss" in Application Note 3. *Id.* Note
3 sets a general rule that "loss" means "the greater of actual loss or
intended loss." U.S.S.G § 2B1.1 cmt. n.(3)(F).

In analyzing an application note regarding an automatic loss of
$500 for a stolen giftcard, *Riccardi* found that the district court erred in
applying the commentary because it did not fall "within the zone of [any]
ambiguity." 989 F.3d at 488 (quoting *Kisor*, 139 S.Ct. at 2416.). Instead,
"if the [Sentencing] Commission seeks to keep individuals behind bars
for longer periods of time based on this type of 'fictional' loss amount, this

substantive policy decision belongs in the guidelines, not in the commentary." *Riccardi*, 989 F.3d at 487.

In 2022, the Third Circuit applied *Kisor's* reasoning and concluded that the loss enhancement in the guideline's application notes impermissibly expanded the word "loss" to include both intended and actual loss. *United States v. Banks*, 55 F.4th 246, 250 (3d Cir. 2022). The court found that the term "loss" was unambiguous in the context of U.S.S.G. § 2B1.1. *Id* at 253. In evaluating definitions of loss from various sources, the court held that the ordinary meaning of "loss" is "actual loss" which in the context of sentence enhancements is the loss the victim actually suffered. *Id* at 258. The court reasoned that the guideline does not mention "actual" versus "intended" loss, and the absence alone indicated that the Guideline does not include intended loss. *Id*.

The Third, Sixth, and Eleventh Circuits have established that after *Kisor*, courts should not defer to the commentary guidelines unless there is genuine ambiguity in the guidelines. *United States v. Cordova-Lopez*, 34 F.4th 442, 444 (5th Cir. 2022); *United States v. Dupree*, 57 F.4th 1269, 1275 (11th Cir. 2023).

41

The Fourth and Tenth Circuit declined to follow *Kisor*, holding that *Stinson v. United States*, 508 U.S. 36; 113 S.Ct. 1913, 1914; 123 L.Ed.2d 598 (1993) is the proper standard for courts addressing the guideline's commentary, while *Kisor* applies to courts addressing executive agency interpretation of legislative rules. *United States v. Moses*, 23 F.4th 347, 349 (4th Cir.2022), *cert. denied*, 214 L.Ed.2d 369; 143 S.Ct. 640 (2023); *United States v. Maloid*, 21-1422, 2023 WL 4141073, at *1 (10th Cir. June 23, 2023). Note that *Stinson* states that the guideline's commentary is "akin to an agency's interpretation of its own legislative rules," citing *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945) which is synonymous with the *Auer* deference that was narrowed by *Kisor*. *Stinson*, 508 U.S. at 45.

The Ninth Circuit has recently considered *Kisor's* effect on *Stinson* and concluded that "*Kisor* is an intervening decision of higher authority." *United States v. Castillo*, 69 F.4th 648, 657 (9th Cir. 2023). The Eleventh Circuit has also opined on this issue and failed to see how *Kisor* would not apply to the sentencing guidelines because *Stinson* adopted word for word the test that the *Kisor* majority regarded as a "caricature" so that

the continued mechanical application of that test would directly conflict with *Kisor*. *Dupree*, 57 F.4th at 1275.

This Court has not yet addressed *Kisor's* effect on sentencing guidelines. *See Cordova-Lopez*, 34 F.4th at 444. But because many of the circuits have, this Court should also.

    *iv. There was no actual loss in light of Kisor.*

As discussed above, the Third Circuit in *Banks* considered *Kisor's* effect on the loss guidelines and commentary. *United States v. Banks*, 55 F.4th 246, 257 (3d Cir. 2022) The court found that "loss" was unambiguous and meant "actual loss," thus the commentary extending the definition to include intended loss should be given no deference under *Kisor* and remanded for resentencing without the intended loss enhancement. *Id* at 258.

The defendant in *Banks* set up a scheme where he opened numerous investment accounts and would deposit into the new accounts from bank accounts with insufficient funds. *Id* at 251. He would then try to withdraw and transfer funds from the investments accounts with the goal being to complete the withdrawals or transfers before the lack of funds would be detected. *Id*. The defendant made fraudulent

misrepresentations as to his income, occupation, and net worth to open up the investment accounts. *Id*.

In total, the defendant made fraudulent deposits of over $300,000.00 and successfully executed 70 withdrawals and transfers over $250,000.00. *Id*. However, the bank did not transfer a single dollar to the defendant and the bank suffered no actual loss. *Id*. Because there was no actual loss, the district court applied the loss enhancements with the intended loss calculation.  *Id* at 253.

Similar to *Banks*, the district court only made a finding of *intended* loss when sentencing Ms. Kasali. ROA.2336. The district court did not make a finding of actual loss in this case. The funds from the approved PPP loan were immediately frozen by the bank, and fully recovered by the Government. ROA.1018, 1339, 1430, 2341. Ms. Kasali received zero dollars. ROA.2139-40, 2341-43. No money actually made it to Ms. Kasali and no money was withdrawn or used by her. ROA.2139-40, 2341-43. Thus, there were no actual losses to support an 18-level enhancement. Without this enhancement, Ms. Kasali's total offense level should have been 9. See U.S.S.G. § 2B1.1. Moreover, with a criminal history category of one, the appropriate sentencing range should have been four to ten

months. Accordingly, this error by the district court warrants resentencing.

### D. The district court erred in awarding restitution.

#### i. *Relevant Facts.*

The initial PSR did not recommend restitution because only one PPP loan was funded and the amount was ultimately recovered in full. ROA.1408. The Government objected to the PSR's finding that no restitution was owed because the SBA had honored the guaranty on the bank loan. ROA.1449. The final PSR restated the finding that no restitution was owed. ROA.1471. In an addendum to the PSR, the Government's objection was addressed and the Probation Officer stated that he "stands by the statements in the PSR as the loan proceeds were recovered in full." ROA.1475. The court did not make a finding of actual loss but granted the Government's objection to no restitution being awarded. ROA.2336. The court awarded restitution in the amount of $2,027,686.64. ROA.2345. Counsel for Ms. Kasali argued against the award of restitution because it would constitute double recovery as the Government was already seeking forfeiture of the seized funds.

ROA.2346. The court overruled the objection but noted that it does seem counterintuitive to require both. ROA.2346.

ii.    *Standard of Review.*

This Court "ordinarily reviews the legality of a restitution order de novo." *United States v. Maturin*, 488 F.3d 657, 659 (5th Cir. 2007); *United States v. Adams*, 363 F.3d 363, 365 (5th Cir. 2004).

iii.    *General Legal Standards.*

The Mandatory Victim Restitution Act (hereinafter "MVRA") mandates a district court to award restitution to victims "directly and proximately harmed by a defendant's offense." 18 U.S.C. §3663A. The MVRA requires that the restitution award be awarded for actual loss, not intended loss. *United States v. Williams*, 993 F.3d 976, 980 (5th Cir. 2021). Moreover, the MVRA does not permit a court to award a windfall to the victim greater than their actual loss. *United States v. DeLeon*, 728 F.3d 500, 506 (5th Cir. 2013); *United States v. Sharma*, 703 F.3d 318, 322 (5th Cir. 2012) ("An award of restitution greater than a victim's actual loss exceeds the MVRA's statutory maximum."); *United States v. Middlebrook*, 553 F.3d 572, 579 (7th Cir. 2009) ("an order of restitution that exceeds the victim's actual losses or damages is an illegal sentence").

46

It also does not allow the same victim to receive restitution twice. *See generally*, *United States v. Taylor*, 582 F.3d 558, 565 (5th Cir. 2009).

    *iv.    There was no actual loss.*

In the instant case, there was no actual loss, nor did the district court make a finding of actual loss. The district court made only a finding of intended loss. Nevertheless, the loss must be directly or proximately caused by the defendant. 18 U.S.C. §3663A; *United States v. Benns*, 810 F.3d 327, 330 (5th Cir. 2016); *United States v. Cardozo*, 68 F.4th 725, 737 (1st Cir. 2023). In other words, restitution should not be ordered in respect to a loss which would have occurred regardless of the defendant's conduct. *United States v. Fallon*, 470 F.3d 542, 549 (3d Cir.2006); *United States v. Vaknin*, 112 F.3d 579, 589 (1st Cir.1997), *abrogated on other grounds*; *see also United States v. Blackburn*, 9 F.3d 353, 359 (5th Cir. 1993). Additionally, "[a]ctual loss also must not include compensation for that which would have occurred in the absence of the crime." *United States v. Sharma*, 703 F.3d 318, 322 (5th Cir. 2012).

In the instant case, the Government based its argument in favor of restitution on the fact that the SBA had to pay the bank for the relevant PPP loan. However, diversion of government benefits is not a pecuniary

loss. *See United States v. Kadhem*, 580 F.Supp.3d 132, 139 (W.D. Pa. 2022) (the Government did not suffer a pecuniary loss because the benefits would have been paid out regardless of Defendant's fraud); *see also United States v. Causey*, 408 F.Supp.3d 1 (D. Mass. 2019) (no actual loss where the Government would have spent money on the benefits even if the defendant had not committed fraud).

Here, even if the loan was not obtained lawfully, the SBA would have still been required to reimburse the bank in the event of default or forgiveness of the loan. ROA.1025. Additionally, the limited PPP fund would have disbursed the money to another recipient in the absence of the alleged fraud. Moreover, the Government fully recovered the amount of the loan and Ms. Kasali did not utilize any of it. ROA.1018. This is not an actual loss to the SBA and is instead a diversion of government benefits that would have been expended absent Ms. Kasali's loan approval.

Additionally, under the MVRA, defendants are required to make full restitution for offenses in which an *identifiable* victim has suffered a pecuniary loss. 18 U.S.C. § 3663A; *United States v. Beydoun*, 469 F.3d 102, 107 (5th Cir. 2006) (emphasis added). Any "victim" here would have

been an applicant whose loan would have been approved instead of Ms. Kasali's, not the SBA or the bank. Accordingly, because there was no finding of loss and no actual loss caused by Ms. Kasali, the district court erred in awarding restitution.

## X.    CONCLUSION

For the foregoing reasons, this Court should reverse Ms. Kasali's conviction and sentence because of the constitutional violations and the district court's errors.

Respectfully submitted,

*/s/ Samuel H. Winston*
SAMUEL H. WINSTON, La. Bar. No. 34821
JEIGH L. BRITTON, La. Bar No. 39820
        Winston Bergeron, LLP
1700 Josephine Street
New Orleans, Louisiana 70113
Telephone: 504-577-2500
Facsimile: 504-577-2652
Email: sam@winstonbergeron.com
jeigh@winstonbergeron.com

## XI.    CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2023, I electronically filed the foregoing with the Clerk of Court under temporary seal pending a ruling by the court by using the CM/ECF system, and that I separately sent notice and a copy of the electronic filing via email to counsel for the Government.

*/s/ Samuel H. Winston*
SAMUEL H. WINSTON
Attorney for Appellant

## XII.   CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,513 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word version 16.74 in Century Schoolbook 14 pt.

*/s/ Samuel H. Winston*
SAMUEL H. WINSTON
Attorney for Appellant